UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

GEORGE MOURIS ADELY MORCOS,

Petitioner,

v.

BRUCE SCOTT, *et al.*,

Respondents.

Case No. C26-3024-SKV

ORDER GRANTING IN PART PETITION FOR WRIT OF HABEAS CORPUS

Petitioner is currently detained by U.S. Immigration and Customs Enforcement ("ICE") at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington. He appeared *pro se* and filed this 28 U.S.C. § 2241 habeas petition, asserting his current detention has become unlawfully prolonged under *Banda v. McAleenan*, 385 F. Supp. 3d 1099 (W.D. Wash. 2019), and in violation of the Due Process Clause of the Fifth Amendment. *See* Dkt. 4. He seeks release from custody unless Respondents prove at a custody hearing before an immigration judge ("IJ") that he presents a danger or flight risk. *Id.* at 14.

Respondents filed a return (Dkt. 8), together with a declaration from U.S. Department of Homeland Security Deportation Officer Kurtis Reed (Dkt. 9) ("Reed Decl."). Petitioner filed a traverse in reply. Dkt. 10.

Having reviewed the parties' submissions and the governing law, the Court GRANTS in part the petition (Dkt. 4) for the reasons set forth below.

## I. BACKGROUND

Petitioner is a native and citizen of Egypt, who first entered the United States near Jamul, California and was encountered by Border Patrol on October 28, 2024. Reed Decl., ¶¶ 3-4. He was arrested and transported to San Diego for further processing. *Id.* ¶ 4. Officer Reed asserts that Petitioner admitted to illegally entering the United States without inspection. *Id.* ¶ 5. ICE Emergency and Removal Operations ("ERO") served Petitioner with a Notice and Order of Expedited Removal under Section 235(b)(1) of the Immigration and Nationality Act ("INA"). *Id.* ¶ 6. The Notice and Order of Expedited Removal is not in the record. On November 26, 2024, Petitioner was transferred to the NWIPC. *Id.* ¶ 7.

Petitioner was not expeditiously removed pursuant to the Order of Expedited Removal. Instead, on December 9, 2024, Petitioner expressed a fear of returning to Egypt during an interview with ICE. *Id.* ¶ 8. He was thereafter referred for a credible fear interview. *Id.*

On February 5, 2025, U.S. Citizenship and Immigration Services served Petitioner with a Notice to Appear ("NTA"), alleging Petitioner was inadmissible under §§ 212(a)(6)(A)(i) and 212(a)(7)(A)(i)(I) of the INA. *Id.* ¶ 9. The NTA is not in the record.

While in custody, Petitioner sought a bond redetermination hearing, which was subsequently held on March 12, 2025. *Id.* ¶ 11. The IJ denied Petitioner's request, finding he was subject to mandatory detention. *Id.*

On August 7, 2025, Petitioner attended an immigration hearing, at which the IJ denied Petitioner's application for relief from removal and ordered Petitioner removed to Egypt. *Id.*

¶ 12. Petitioner filed an appeal of the IJ's removal order to the Board of Immigration Appeals ("BIA"), which was subsequently dismissed by the BIA on April 13, 2026. *Id.* ¶¶ 13-14.

The same day, Petitioner filed a habeas petition in this District, challenging his detention as prolonged under *Banda*. *Id.* ¶ 15; *see Marcos v. Scott*, C26-01247-RSM, 2026 WL 1862087 (W.D. Wash. June 29, 2026) ("*Marcos I*").[1] The court denied *Marcos I* on June 29, 2026, finding after an "extensive" discussion of the factors by the parties that they ultimately weighed in favor of the Government. *Id.* at *3.

On April 28, 2026, Petitioner filed a petition for review of his removal order with the Ninth Circuit Court of Appeals, which issued a temporary stay of removal. Reed Decl., ¶ 16; *see generally Marcos v. Blanche*, No. 26-2655 (9th Cir. 2026).

On August 28, 2026, Petitioner filed the instant petition. Dkt. 4.

## II. LEGAL STANDARDS

District courts may grant writs of habeas corpus "within their respective jurisdictions." 28 U.S.C. § 2241(a). This authority extends to challenges to immigration detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001). A petitioner may obtain relief by showing that he is "in custody in violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241(c). A petitioner bears the burden of proof by a preponderance of the evidence. *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004).

## III. DISCUSSION

Petitioner's sole claim challenges his detention as prolonged under *Banda*. Dkt. 4 at 8-11. Respondents contend that the only difference between Petitioner's detention today and his

[1] The pleadings filed in this case show Petitioner's last name as both "Morcos" and "Marcos." *See* Dkt. 4 at 1 ("Morcos"); Dkt. 10 at 1 ("Marcos"). There does not appear to be any dispute that Petitioner is the same individual who filed *Marcos I*.

detention at the time his previous habeas petition was denied is an additional two months in an already-lengthy detention. Dkt. 8 at 6. While acknowledging 22 months is significant, Respondents contend that Petitioner has failed to "demonstrate a factual" shift in the remaining *Banda* factors. *Id.*

**A. Statutory Detention Authority**

Respondents classify Petitioner's detention as mandatory pursuant to 8 U.S.C. § 1225(b). Dkt. 8 at 2. Petitioner challenges that classification in his reply and asserts that his detention is instead governed by § 1226(a). Dkt. 10 at 1-2. Petitioner does not discuss or challenge his statutory classification in his petition, or raise claims connected to it, such as a statutory right to a bond hearing under § 1226(a). *See generally* Dkt. 4. And the fact that Petitioner only seeks a bond hearing under *Banda* can be reasonably interpreted as tacit concession that his detention falls under § 1225(b). Nevertheless, given the liberal construction owed *pro se* pleadings, the Court will attempt to resolve this threshold issue, as the governing scheme "can affect whether his detention is mandatory or discretionary, as well as the kind of review process available to him if he wishes to contest the necessity of his detention." *Prieto-Romero v. Clark*, 534 F.3d 1053, 1057 (9th Cir. 2008).

Three statutes govern immigration detention: 8 U.S.C. §§ 1225(b), 1226(a), and 1231. Section 1225 applies to "applicants for admission" who "arrive[] in the United States," or are "present" in the United States but have "not been admitted." 8 U.S.C. § 1225(a)(1). There are two categories of applicants for admission: those who fall under § 1225(b)(1) and those who fall under § 1225(b)(2), which "serves as a catchall provision that applies to all applicants for admission not covered by § 1225(b)(1)[.]" *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018). Section 1226(a), in contrast, has been characterized as setting out the "default rule" as

authorizing the detention or conditional release of certain noncitizens "already in the country pending the outcome of removal proceedings[.]" *Id.* at 289.

The record is limited but demonstrates that Petitioner was apprehended either on the day, or shortly after, he entered the United States near the border. He was detained and processed for expedited removal under Section 235(b), which is codified at § 1225(b). He has remained in detention since his apprehension and is charged under INA § 212(a)(7)(A)(i)(I) as an applicant for admission who "is not in possession of [valid documents]." Reed Decl., ¶ 9; *see Jennings*, 583 U.S. at 287 (acknowledging § 1225(b)(1) applies to [noncitizens] initially determined to be inadmissible due to . . . lack of valid documentation."). After asserting a fear of returning to Egypt, Petitioner remained detained and was subsequently provided a credible fear interview. Reed Decl., ¶ 8; *see Jennings*, 583 U.S. at 287 ("If an immigration officer determines after that interview that the [§ 1225(b)(1) noncitizen] has a credible fear of persecution, 'the [noncitizen] shall be detained for further consideration of the application for asylum.'") (quoting § 1225(b)(1)(B)(ii)). Petitioner's detention history thus appears to align with the language of § 1225(b)(1) and supports finding Petitioner subject to mandatory detention under § 1225(b), as Respondents contend. Dkt. 8 at 2.

On the other hand, there is some evidence Petitioner is detained under § 1226(a). Petitioner points to the fact that he was detained inside the United States. Dkt. 10 at 1-2. That position, on its face, has some teeth, as the Ninth Circuit has recently held that noncitizens present without admission who are detained within the interior of the United States are subject to § 1226(a) and not § 1225(b). *See Rodriguez Vazquez v. Bostock*, 183 F.4th 1160, 1165 (9th Cir. 2026). Officer Reed asserts only that border patrol encountered Petitioner on October 28, 2024, and "determined that Petitioner entered the United States at a time and place other than as

designated by the Secretary of Homeland Security." Reed Decl., ¶ 4. However, it is not immediately clear *when* that entry occurred. The Court also observes that the court in *Marcos I* found that Petitioner entered the United States on November 18, 2024, near Otay Mesa, California, which does not provide clarity. *Marcos*, 2026 WL 1862087, at *1. Neither party in this case explains that discrepancy or further discusses the timing of Petitioner's first entry into the United States.

Petitioner also asserts that the NTA classifying him as a "[noncitizen] present in the [United States]," rather than an "arriving noncitizen," shows he falls under the discretionary detention scheme in § 1226(a). Dkt. 10 at 2. Although the NTA is not in the record, the Court presumes this to be true, as Officer Reed acknowledges in his declaration that the NTA charged Petitioner under, *inter alia*, INA § 212(a)(6)(A)(i) as a noncitizen "present in the United States without being admitted or paroled[.]" *See* Reed Decl., ¶ 9. Although not dispositive, such designation is evidence that Petitioner is detained under § 1226(a), *see Del Valle Castillo v. Wamsley*, 2025 WL 3524932, at *6 (W.D. Wash. Nov. 26, 2025), particularly when coupled with the fact that a noncitizen cannot be charged under § 212(a)(6)(A)(i) while subject to expedited removal under § 1225(b)(1), as Respondents allege is the case here. Dkt. 8 at 3; *but see* 8 C.F.R. § 235.3(B)(3) ("In the expedited removal process, the Service may not charge an alien with any additional grounds of inadmissibility other than section 212(a)(6)(C) or 212(a)(7) of the Act."). Respondents do not acknowledge why, or explain how, Petitioner can remain detained under § 1225(b)(1) while also charged with a disqualifying section of the INA. *See generally* Dkt. 8.

All said, the very limited evidentiary record does not resolve the question of whether Petitioner is detained under § 1226(a) or § 1225(b). Given that the parties focus on Petitioner's claim under *Banda*, which sets out the framework used to determine whether a § 1225(b)

detainee is entitled to a bond hearing under the Fifth Amendment, the Court will proceed on the assumption that Petitioner is subject to § 1225(b).

**B. *Banda* and Prolonged Detention**

Both § 1225(b)(1) and § 1225(b)(2) mandate detention of noncitizens for the entirety of the applicable proceedings. *Jennings*, 583 U.S. at 302. And the "statute does not impose 'any limit on the length of detention' pending a decision on the asylum application and does not authorize bond hearings or release on bond." *Banda*, 385 F. Supp. 3d at 1112 (quoting *Jennings*, 583 U.S. at 296). However, both the Supreme Court and Ninth Circuit have "grappled . . . with whether the various immigration detention statutes may authorize indefinite or prolonged detention of detainees and, if so, may do so without providing a bond hearing." *Rodriguez v. Robbins*, 804 F.3d 1060, 1067 (9th Cir. 2015), *rev'd sub nom. Jennings v. Rodriguez*, 583 U.S. 281 (2018) (quoted source omitted) (discussing, *inter alia*, *Zadvydas*, 533 U.S. 678, *Demore v. Kim*, 538 U.S. 510 (2003), and *Tijani v. Willis*, 430 F.3d 1241 (9th Cir. 2005)). *See also Toktosunov v. Wamsley*, C25-1724-TL, 2025 WL 3492858, at *2-4 (W.D. Wash. Dec. 5, 2025) (discussing case law).

In *Jennings*, the Supreme Court held that § 1225(b) "unambiguously authorizes detention pending resolution of removal proceedings and does not plausibly suggest a 6-month limitation or periodic bond hearings." *Banda*, 385 F. Supp. 3d at 1115 (citing *Jennings*, 583 U.S. at 297, 303). While *Jennings* declined to address whether the Constitution places limits on prolonged detention under the INA, *see* 583 U.S. at 312, the Ninth Circuit post-*Jennings* expressed "grave doubts that any statute that allows for arbitrary prolonged detention without any process is constitutional or that those who founded our democracy precisely to protect against the government's arbitrary deprivation of liberty would have thought so." *Rodriguez v. Marin*, 909

F.3d 252, 256 (9th Cir. 2018). Moreover, "[n]early all district courts that have considered the issue agree that prolonged mandatory detention pending removal proceedings, without a bond hearing, will—at some point—violate the right to due process." *Banda*, 385 F. Supp. 3d at 1116.

Neither the Supreme Court, nor the Ninth Circuit has settled on a test for assessing the constitutionality of prolonged mandatory detention. *See id*. This Court applies the "*Banda*" test in determining whether a noncitizen's detention under § 1225(b) violates due process. *See, e.g.*, *Maliwat v. Scott*, C25-0788-TMC, 2025 WL 2256711, at *3 (W.D. Wash. Aug. 7, 2025); *Hong v. Mayorkas*, C20-1784-LK, 2022 WL 1078627, at *4-5 (W.D. Wash. Apr. 11, 2022). In *Banda*, the Court found "unreasonably prolonged detention under § 1225(b) without a bond hearing violates due process." *Banda*, 385 F. Supp. 3d at 1106, 1117. The Court declined to adopt a rule that detention became unreasonably prolonged at six months, explaining that, pursuant to *Zadvydas*, "at six months, the burden is on the detainee – not the government – to establish a basis for release[,]" and found such a rule would be "inconsistent with the fact-dependent nature of the constitutional question before the Court, namely whether petitioner's prolonged detention has become unreasonable." *Id*. at 1117 (citing *Zadvydas*, 533 U.S. at 701). The Court, instead, adopted a multi-factor test to apply in making the determination of whether § 1225(b) detention has become unreasonable, considering: "(1) the total length of detention to date; (2) the likely duration of future detention; (3) the conditions of detention; (4) delays in the removal proceedings caused by the detainee; (5) delays in the removal proceedings caused by the government; and (6) the likelihood that the removal proceedings will result in a final order of removal." *Id*. at 1106 (quoting *Jamal A. v. Whitaker*, 358 F. Supp. 3d 853, 858-59 (D. Minn. 2019)).

As noted, the parties apply *Banda* to Petitioner's current detention but reach opposite conclusions. *Compare* Dkt. 4 at 8-11, *with* Dkt. 8 at 2.

*1. Length of Detention*

The parties agree Petitioner's detention, which now exceeds 23 months, weighs in his favor. Dkt. 4 at 8-9; Dkt. 8 at 6. *See Banda*, 385 F. Supp. 3d at 1118 (acknowledging the length of detention as the most important factor). The length of Petitioner's detention strongly weighs in favor of a bond hearing.

*2. Likely Duration of Future Detention*

Next, "the Court considers how long the detention is likely to continue absent judicial intervention; in other words, the 'anticipated duration of all removal proceedings—including administrative and judicial appeals.'" *Id.* at 1119 (citation omitted). Petitioner asserts this factor weighs in favor of a bond hearing because he has a pending petition for review with the Ninth Circuit, which can "take up to more than two years to complete." Dkt. 4 at 9. Respondents do not respond to this claim, and appear to incorporate their arguments, along with the court's findings, from *Marcos I*. Dkt. 8 at 5-6.

In *Marcos I*, the court found that "the likely duration of future detention is short in the sense that Petitioner has exhausted nearly every procedural basis to avoid removal." *Marcos*, 2026 WL 1862087, at *1-2. The court did not discuss the anticipated timing of Petitioner's Ninth Circuit petition for review beyond acknowledging it was filed. *Id.* at *1. Although the Court has limited information about Petitioner's pending Ninth Circuit case, such as whether a briefing schedule has issued and the nature of the claim(s) on review, it is reasonable to predict many more months will pass before the Court of Appeals decides the case on the merits. *See Hong*, 2022 WL 1078627, at *7 (noting that appeals before the Ninth Circuit typically pend for

twelve to twenty months before argument and then an additional three months to a year before decision, and finding the factor favors petitioner). This factor weighs in favor of a bond hearing.

*3. Conditions of Detention*

In *Banda*, the court explained that "the more that the conditions under which the [noncitizen] is being held resemble penal confinement, the stronger his argument that he is entitled to a bond hearing." 385 F. Supp. 3d at 1119. Petitioner asserts that he is "forced to sleep with a large number of people in the same room, [where] it is always loud and [he] cannot sleep well[.]" Dkt. 4 at 9-10. He further asserts that the "lights are never completely turned off", which interferes with his sleep. *Id.* at 10. He also asserts the meals are inadequate, he has limited access to books, education, and religion, and the medical care is poor. *Id.*

Respondents do not acknowledge or respond to these assertions. *See generally* Dkt. 8. Accordingly, the Court finds that Petitioner has demonstrated the conditions at the NWIPC resemble penal confinement, which weighs in favor of a bond hearing.

*4. Delays in the Removal Proceedings*

Next, the Court considers any delay caused by the parties. *Banda*, 385 F. Supp. 3d at 1119-20. Petitioner asserts that the "[G]overnment took time to provide the interpreter and conduct the credible fear interview." Dkt. 4 at 10. He further asserts that he "languished in detention" for months before the Government issued the NTA. *Id.*

The undeveloped record makes it difficult to assess these assertions. From Officer Reed's declaration, the Court observes that Petitioner first asserted a fear of returning to Egypt on December 9, 2024, and was thereafter referred for a credible fear interview. Reed Decl., ¶ 8. However, it is unclear when that interview occurred. The next date of import from Officer

Reed's declaration is February 4, 2025, when a "Supervisory Asylum Officer" issued the most recent, and operative, NTA. *Id.*

Neither party discusses the credible fear process generally or provides any relevant legal authority as to the timing upon which the interviews are to occur after an expression of fear. Thus, the Court cannot say whether the several months between Petitioner's expression of fear and the NTA issuing was typical or, instead, unreasonably delayed. On the limited record before it, the Court does not find the Government caused material delay in the proceedings.

As for any delay caused by Petitioner, Respondents do not assert he has caused any. *See generally* Dkt. 8. These factors accordingly weigh neutral.

*5. Likelihood of a Final Order of Removal*

Finally, the Court considers "the likelihood that the final proceedings will culminate in a final order of removal." *Banda*, 385 F. Supp. 3d at 1120 (citation omitted). Petitioner asserts this factor weighs neutral because his appeal after a denial of relief is pending. Dkt. 4 at 11 (citing *Djelassi v. ICE Field Off. Dir.*, 434 F. Supp. 3d 917, 922 (W.D. Wash. 2020)). In *Djelassi*, the noncitizen petitioner's asylum application was denied by the IJ and BIA, and petitioner sought review in the Ninth Circuit. *Id.* at 932. The district court found that it did not have sufficient information to determine whether the appeal had merit and, accordingly, found that factor weighed neutral under *Banda*. *Id.* Similarly, here, the Court does not have any information about Petitioner's appeal other than the fact it has been filed and is pending. This weighs neutral.

In sum, three factors weigh in favor of a bond hearing and the remaining three weigh neutral. The Court therefore finds that Petitioner's detention has become unreasonably prolonged and Petitioner is entitled to a bond hearing. *Banda*, 385 F. Supp. 3d at 1120-21; *see*

*Tavurov v. Noem*, 819 F. Supp. 3d 1209, 1224 (W.D. Wash. 2026) (finding due process entitled petitioner to a bond hearing when three factors weighed in favor of petitioner and remaining three weighed neutral).

The Court, consistent with the practice of this District, will order that a bond hearing be held before an IJ within fourteen days of this Order. *See, e.g.*, *Toktosunov*, 2025 WL 3492858, at *6; *Maliwat*, 2025 WL 2256711, at *10. Also, and as this Court has previously recognized, Respondents are properly held to a clear and convincing standard of proof at that hearing, *see Singh v. Holder*, 638 F.3d 1196, 1203 (9th Cir. 2011), and, if they fail to meet that burden, Petitioner's financial circumstances and alternative release conditions must be considered. *See, e.g., Toktosunov*, 2025 WL 3492858, at *6; *Maliwat*, 2025 WL 2256711, at *10.

## IV. CONCLUSION

Based on the foregoing, this Court hereby FINDS and ORDERS as follows:

(1) Petitioner's petition for writ of habeas corpus (Dkt. 4) is GRANTED in part.

(2) Petitioner's request for immediate release is DENIED.

(3) Within **fourteen (14) days** of the date of this Order, Respondents shall provide Petitioner with an individualized bond hearing that complies with the requirements of *Singh v. Holder*, 638 F.3d 1196 (9th Cir. 2011). Nothing from this Court's order prevents Petitioner from requesting, or the immigration court from granting, a continuance of the hearing.

(4) Any fee petition shall be filed within the deadlines set by the Equal Access to

/ / /

/ / /

/ / /

/ / /

Justice Act, 28 U.S.C. § 2412.

Dated this 8th day of October, 2026.

S. KATE VAUGHAN
United States Magistrate Judge